

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5439 | **DATE** | 1/24/2001 |
| **CASE TITLE** | Torco Holdings, Inc. et al. Vs. P & M Aircraft Co, Inc. et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. P & M now moves to dismiss the complaint for lack of personal jurisdiction. For the reasons set forth below, we grant P & M's motion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | | JAN 2 5 2001 | | |
| ✓ | Docketing to mail notices. | | | date docketed | | 13 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| WAH | courtroom deputy's initials | | E-IT MEIL ACK DOCKETING 01 JAN 25 AM 8: 39 | date mailed notice | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TORCO HOLDINGS, INC., a Delaware )
corporation, TORCO OIL COMPANY, )
an Illinois corporation, )
                            )
        **Plaintiffs,** )
                            )
        **vs.** )      No. 00 C 5439
                            )
P&M AIRCRAFT COMPANY, INC., a )
California corporation, and MICHAEL )
POTTER, a California citizen, )
individually and d/b/a P&M AIRCRAFT )
COMPANY, )
                            )
        **Defendants.** )

DOCKETED
JAN 2 5 2001

## MEMORANDUM OPINION AND ORDER

    This dispute arises out of the parties' agreement to ship 56 airplane engines from Mojave, California, to Dundee, Illinois. Plaintiffs Torco Holding, Inc. and Torco Oil Company (collectively "Torco") claim that they received only 51 conforming engines and therefore bring this action against P&M Aircraft Company, Inc. and its president Michael L. Potter (collectively "P&M") alleging violations of contract, tort and state statutory law. P&M now moves to dismiss the complaint for lack of personal jurisdiction. For the reasons set forth below, we grant P&M's motion.

## BACKGROUND

    Torco is an Illinois corporation with its principal place of business in Dundee, Illinois. For several years prior to 1999, Torco owned fourteen Convair 880 commercial airplanes which it warehoused in Mojave, California. Each airplane was powered by four CJ805 turbine engines. In 1999, Torco decided to convert the engines from the planes for resale as

13

power generators.  Torco had buyers lined up for the generators but needed someone in
Mojave to take apart the engines and ship them to Dundee.  Enter P&M, a small California
company operating in Mojave.  By a one-page contract executed on November 2, 1999, P&M
agreed to take immediate custody of the planes, dismantle the engines, and arrange
transportation for the 56 turbines (four per plane) to Torco's facility in Illinois.  In exchange,
Torco would convey ownership of the hull and remaining parts of the fourteen airplanes to
P&M.

Over the ensuing several months P&M dismantled the engines and prepared them for
the trip across the country.  The task of transporting the engines was left to a common carrier
hired by P&M to make periodic shipments from Mojave to Dundee.  On June 16, 2000, P&M
informed Torco that shipment of all 56 engines had been completed.  Torco disagreed,
claiming that it had received only 51 of the 56 engines.  Torco also accused P&M of sending
four of the missing engines to a third party without authorization, and of delivering four
engines to Torco that did not come from the Convair 880 airplanes and therefore were non-
conforming.  Torco demanded satisfaction, but P&M maintained that it had fulfilled its duties
under the contract.

Torco thereafter brought this diversity action against P&M.  In its complaint, Torco
accuses P&M of violating the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815
ILCS 505/1 *et seq.* (count I), and also alleges conversion (count II), breach of bailment (count
III), and breach of contract (count IV).  P&M has responded with a motion to dismiss under
Rule 12(b)(2) for lack of personal jurisdiction.

## DISCUSSION

On a motion to dismiss the plaintiff bears the burden of demonstrating the existence

of personal jurisdiction. <u>RAR, Inc. v. Turner Diesel, Ltd.</u>, 107 F.3d 1272, 1276 (7th Cir. 1997). In determining whether personal jurisdiction exists, we may receive and consider affidavits from both parties. <u>Turnock v. Cope</u>, 816 F.2d 332, 333 (7th Cir. 1987). We must resolve factual disputes in the pleadings and affidavits in favor of the plaintiff, but take as true those facts in defendant's affidavits that are unrefuted. <u>Jamik, Inc. v. Days Inn of Mount Laurel</u>, 74 F.Supp.2d 818, 821 (N.D. Ill. 1999).

In a diversity action a federal court has personal jurisdiction if a court in the state in which it sits would have such jurisdiction. *See* <u>Klump v. Duffus</u>, 71 F.3d 1368, 1371 (7th Cir. 1995); *cert. denied*, 518 U.S.1004 (1996). The Illinois long arm statute provides that an Illinois court may exercise personal jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States. 735 ILCS 5/2-209(c). Under the Illinois Constitution's due process clause, personal jurisdiction "is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." <u>Rollins v. Ellwood</u>, 565 N.E.2d 1302, 1316 (Ill. 1990). While Illinois courts have held that Illinois due process is not necessarily identical to federal due process (*see id.*), they have provided little guidance as to how the two constitutional principles differ. *See* <u>Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.</u>, 230 F.3d 934, 940 (7th Cir. 2000). Therefore, we will focus our inquiry on the federal constitutional requirements for personal jurisdiction.

Torco urges us to exercise specific personal jurisdiction over P&M in this lawsuit.[1] In

---

[1]Torco does not, and cannot, rely on a theory of general personal jurisdiction. P&M is a two-person California company with its sole office located in Mojave; it is not licensed to do business in any other state. P&M has no physical presence – no office, mailbox, or telephone – in Illinois, and it does not market or solicit business in this state (Potter Aff. at ¶¶ 6-10). P&M does not have "continuous and systematic general

RAR, the Seventh Circuit elucidated the constitutional standards applicable in such cases:

> In specific jurisdiction cases, we must decide whether a defendant has "purposefully established minimum contacts within the forum State" and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances. Crucial to the minimum contacts analysis is showing that the defendant "should reasonably anticipate being haled into court [in the forum State]," because the defendant has "purposefully avail[ed] itself of the privilege of conducting activities" there.

RAR, 107 F.3d at 1277 (citations omitted). Of course, specific jurisdiction also requires that the lawsuit "arise out of" or "be related to" a defendant's minimum contacts with the forum state. Id. Thus, we must examine P&M's contacts with Illinois to determine whether this lawsuit arises out of those contacts in a manner sufficient to warrant exercising specific personal jurisdiction over P&M.

It is well settled that a non-resident defendant, like P&M, does not subject itself to personal jurisdiction in Illinois simply by entering into a contract with an Illinois resident. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985). Instead, courts consider a number of factors as relevant to the question of specific jurisdiction where contractual relations are involved. These factors include who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract. See RAR, 107 F.3d at 1277. Applying these standards to the facts at hand, we find that P&M is not subject to personal jurisdiction in Illinois.

According to the parties' affidavits,[2] Torco initiated contact with P&M when John F. Garrett, a Torco official, traveled to Mojave to meet with Potter (Potter Aff. at ¶ 11). P&M

---

business contacts" with Illinois and therefore is not subject to general jurisdiction here. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

[2]Potter swore out an affidavit in support of P&M (P&M Exh. B), and James M. Vainisi, Torco's vice president, submitted one on behalf of his company (Torco Exh. 2).

states, albeit only in its brief and not by way of affidavit, that the ensuing negotiations took place in California (P&M Br. at 2, 4). Torco does not contest this statement and, significantly, submits no evidence suggesting that Potter ever traveled to Illinois or even directed telephone calls or faxes into our state during the negotiation process. However they were conducted, the negotiations were a success and the parties struck a deal. The resulting one-page contract was signed in Illinois by Anthony Tortoriello, Torco's chairman, and ultimately executed in California by both Garrett and Potter (Potter Aff. at ¶ 14; Vainisi Aff. at ¶ 2). *See* Youngstown Sheet & Tube Co. v. Industrial Commission, 404 N.E.2d 253, 257 (Ill. 1980) (holding that "the place where the last act necessary to give validity to the contract is done is the place where the contract is made."). After the contract was executed, P&M began dismantling the engines and packing them for delivery. This work took place in Mojave over the course of several months. P&M did not transport the engines to Illinois on its own. Instead, it hired an interstate common carrier to make periodic shipments from Mojave to Dundee (Potter Aff. at ¶ 15). Based on these facts, P&M argues that it operated exclusively in California throughout this process and therefore did not establish minimum contacts in Illinois.

P&M makes a strong case that the contract was initiated, negotiated, executed, and performed in Mojave. Torco's only real dispute is with the last point. Torco argues that at least partial performance was to take place in Illinois since the contract called on P&M to ship the engines to Torco's facility in Dundee. This fact is not enough to tip the balance. Admittedly, the shipment of goods into Illinois weighs in favor of exercising personal jurisdiction here. *See* Mid-America Tablewares, Inc. v. Mogi Trading Co. Ltd., 100 F.3d 1353, 1360 (7th Cir. 1996); Swissland Packing Co. v. Cox, 627 N.E.2d 686, 688 (Ill.App. 3 Dist. 1994). And P&M was aware from the start that the engines were to be shipped to Torco's facility in

Dundee. *See* <u>Rose v. Franchetti</u>, 979 F.2d 81, 84-85 (7th Cir. 1992) (affirming personal jurisdiction where, *inter alia*, defendant knew that its defective airplane would be transported to Illinois). But that factor alone cannot carry the day for Torco.[3] Nearly all of P&M's activity in furtherance of the contract took place in Mojave. In addition to initiation, negotiation and execution of the contract there, the bulk of performance – separating the engines from the hulls, dismantling them, and preparing them for shipment – was completed in Mojave. Moreover, P&M never set foot in Illinois; it hired a common carrier to take possession of the engines in Mojave and transport them to Dundee. There are not enough Illinois contacts to warrant personal jurisdiction in Illinois. *See* <u>Native American Arts, Inc. v. Moon Raven Int'l, Inc.</u>, 1998 WL 325245, at *5 (N. D. Ill. Jun. 10, 1998) (holding that shipment of products into Illinois, without more, is not sufficient to trigger personal jurisdiction); <u>Western Textile, Inc. v. Transprint U.S.A., Inc.</u>, 1996 WL 172195, at *4 (N.D. Ill. Apr. 10, 1996) (same); <u>Buxton v. Wyland Galleries Hawaii</u>, 657 N.E.2d 708, 711-12 (Ill.App. 4 Dist. 1995) (same), <u>appeal</u> <u>denied</u>, 662 N.E.2d 422 (1996).

.          The contract at issue here simply obliged P&M to dismantle the engines and arrange for their transport to Illinois by "truck or mail carrier" (Cplt. Exh. A at ¶ 3). P&M did so without leaving Mojave, although there is a dispute as to whether it shipped all the proper engines. A similar scenario was at issue in <u>RAR</u>, 107 F.3d at 1279-80. The plaintiff in that case, an Illinois company, initiated a contractual relationship with the defendant, a Scottish company. The

---

[3]None of the cases cited by Torco hold that personal jurisdiction can arise from shipment of goods alone; they all include some other factor besides shipment linking defendant to the forum state. Furthermore, we disagree with Torco's tacit characterization of this case as a dispute over the delivery of defective goods. *See generally* <u>Asahi Metal Industry Co. v. Superior Court of California</u>, 480 U.S. 102 (1987) (discussing the stream of commerce theory). P&M did not manufacture and then ship defective aircraft engines into Illinois. The engines at issue here were affixed to airplanes that Torco had owned and warehoused in Mojave for several years. P&M simply dismantled Torco's engines and sent them to Illinois, keeping the airplane hulls for itself.

contract, which was negotiated primarily in Scotland, provided that the defendant would strip parts from aircraft engines in Scotland and then package the engines and ship them to Detroit, Michigan. Even though the defendant knew that at least some of its shipment was headed into plaintiff's home state of Illinois, the Seventh Circuit held that since most of the activity took place in Scotland it could not exercise personal jurisdiction over the defendant in Illinois without offending the constitution. *Id.* Similarly, P&M's activity here was almost exclusively Californian, and there are not enough contacts with Illinois to justify jurisdiction here.

Jurisdictional rules are meant to give a "degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). P&M structured its conduct such that it could not have anticipated being "haled into court" in Illinois. Therefore, P&M is not subject to personal jurisdiction in this state.

### CONCLUSION

For the reasons set forth above, P&M's motion to dismiss is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

Jan. 24, 2001.